

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

## Official Use Only

| Case Number | Judge | Magistrate Judge |
|---|---|---|
|  |  |  |

Case:2:18-cv-11471
Judge: Steeh, George Caram
MJ: Stafford, Elizabeth A.
Filed: 05-09-2018 At 11:55 AM
PRIS KITCHEN VS WASHINGTON, ET AL.
(DP)

## PRISONER CIVIL RIGHTS COMPLAINT

*This form is for use by state prisoners filing under 42 U.S.C. § 1983 and federal prisoners filing pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

### Plaintiff's Information

| Name   Michael A. Kitchen | Prisoner No.   189265 |
|---|---|

| Place of Confinement   Carson City Correctional Facility |
|---|

| Street   10274 E. Boyer Road | City   Carson City | State   MI | Zip Code   48811 |
|---|---|---|---|

Are there additional plaintiffs? ☐ Yes ☒ No

*If yes, any additional plaintiffs to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide names, prisoner numbers and addresses for all plaintiffs.*

### Defendant's Information

| Name   Heidi Washington | Position   Director |
|---|---|

| Street/P.O. Box   MDOC Main Office P.O. Box 30003 | City   Lansing | State   MI | Zip Code   48909 |
|---|---|---|---|

Are you suing this defendant in his/her: ☐ Personal Capacity ☐ Official Capacity ☒ Both Capacities

Are you suing more than one defendant? ☒ Yes ☐ No   See Attached

*If yes, any additional defendants to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.*

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. KITCHEN

      Plaintiff,

v.

HEIDI WASHINGTON, RANDEE
REWERTS, T. KAPUSTKA,
& OFFICERS GARY COLLINS,
HUNT, STANLEY, & ROBERTS,

      Defendants.

_____/

Case No. _____

Honorable: _____

**PRISONER CIVIL RIGHTS ACTION**

## PREVIOUSLY FILED LAWSUITS

### WESTERN DISTRICT OF MICHIGAN

| | | | | |
|---|---|---|---|---|
| 2:91-cv-00230 | Kitchen v. Osier | Filed: 09/12/91 | Closed: | 01/30/96 |
| 1:93-cv-00034 | Kitchen v. Vidor | Filed: 01/13/93 | Closed: | 04/07/93 |
| 1:93-cv-00792 | Kitchen v. Toombs | Filed: 09/30/93 | Closed: | 01/22/96 |
| 1:93-cv-00944 | Kitchen v. Voet | Filed: 11/24/93 | Closed: | 09/14/94 |
| 2:00-cv-00183 | Kitchen v. Bouchard | Filed: 09/29/00 | Closed: | 08/06/03 |
| 2:05-cv-00267 | Kitchen v. MDOC | Filed: 11/03/05 | Closed: | 01/10/06 |
| 2:06-cv-00251 | Kitchen v. Winn | Filed: 10/02/06 | Closed: | 03/07/08 |
| 1:16-cv-00190 | Kitchen v. Snyder | Filed: 02/23/16 | Still Pending | |
| 1:16-cv-01068 | Kitchen v. Corizon | Filed: 08/29/16 | Still Pending | |

### EASTERN DISTRICT OF MICHIGAN

| | | | | |
|---|---|---|---|---|
| 2:93-cv-71555 | Kitchen v. Kitchen | Filed: 04/14/93 | Closed: | 05/13/93 |
| 2:14-cv-12883 | Kitchen v. Heyns | Filed: 07/23/14 | Still Pending | |
| 2:17-cv-11627 | Kitchen v. Winn | Filed: 05/19/17 | Still Pending | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. KITCHEN
      Plaintiff,

v.

Case No. _____

Honorable: _____

HEIDI WASHINGTON, RANDEE
REWERTS, T. KAPUSTKA,
& OFFICERS GARY COLLINS,
HUNT, STANLEY, & ROBERTS,

Defendants.

**PRISONER CIVIL RIGHTS ACTION**

---

| | |
|---|---|
| Michael A. Kitchen (#189265) | Bill Schuette, Attorney General |
| Plaintiff Proceeding Pro Se | Attorney For Defendants |
| Carson City Correctional Facility | Dept. of Attorney General |
| 10274 Boyer Road | P.O. Box 30736 |
| Carson City, Michigan 48811 | Lansing, Michigan 48909 |

---

## CIVIL RIGHTS ACT COMPLAINT

NOW COMES Plaintiff Michael Andrew Kitchen, proceeding pro se, in a complaint for damages and injunctive relief against Director Heidi Washington, Warden Randee Rewerts, Captain T. Kapustka, and Corrections Officers Gary Collins, Hunt, Stanley, and Roberts, and hereby states as follows:

### INTRODUCTION

1. This action for damages and injunctive relief is brought under 42 USC § 1983. Plaintiff Kitchen is suing several prison officials for abuse of process and a First Amendment violation following the filing of false misconduct charges for retaliatory purposes that effectively increased the level of his confinement. Kitchen is also suing prison officials for cruel and unusual punishment because of the conditions of his confinement following the increase, and for abuse of process and substantive due process violations

- 1 -

because the Defendants exerted governmental power over Plaintiff Kitchen during the course of disciplinary proceedings for the purposes of oppression and to aid prison guards in their acts of retaliation.

## J U R I S D I C T I O N

1.     Jurisdiction is conferred on this Court by 28 USC § 1331, which authorizes federal courts to decide cases concerning federal questions, by 28 USC § 1343(a), which authorizes federal courts to hear civil rights cases, and by 28 USC § 1367, invoking this Court's pendent jurisdiction.

## V E N U E

2.     Venue is proper in this Court because the Defendants conduct their business across the state, including in the Western District of Michigan, and the causes of action set forth herein occurred in this district.

## P A R T I E S

4.     Plaintiff Michael Andrew Kitchen is a prisoner within the Michigan Department of Corrections (MDOC) currently residing at the Carson City Correctional Facility located at 10274 Boyer Road, Carson City, Michigan.

5.     Defendant Heidi Washington is the Director of the MDOC, has authority over all correctional facilities in the state, and is responsible for the implementation of policies and procedures concerning the discipline of prisoners and the conduct of Class II disciplinary hearings conducted against MDOC prisoners.  She can be located at the MDOC's Main Office at the Grandview Plaza Building, P.O. Box 30003, Lansing, Michigan 48909.  Defendant Washington is being sued in her individual and official capacities.

6.     Defendant Randee Rewerts is the Warden of the Carson City Correctional Facility (DRF), and is responsible for the implementation of operating procedures that carry out the policies implemented by Defendant Washington for the conduct of Class II disciplinary hearings that are

- 2 -

conducted for the discipline of prisoners. He can be located at the Carson City Correctional Facility, 10274 Boyer Road, Carson City, Michigan 48811, and is being sued in his individual and official capacities.

7.   Defendant T. Kapustka is a Captain at DRF who is responsible for, among other things, conducting disciplinary hearings against prisoners accused of Class II misconduct violations in accordance with the policies implemented by Defendants Washington and Rewerts, in addition to supervising the guards or officers whom file Class II misconduct charges against prisoners. Like Defendant Rewerts, he can be located at the Carson City Correctional Facility, and is being sued in his individual and official capacities.

8.   Defendants Hunt, Stanley, Roberts, and Collins are Corrections Officers at the Carson City Correctional Facility, with Defendant Collins holding the rank of property sergeant, and they are all part of an exclusive segment or crew within the facility known as "custody staff" that are assigned to the facility's 300 Building. They can be located at DRF, and are all being sued in their individual and official capacities.

## FACTUAL ALLEGATIONS

9.   On March 17, 2018, Kitchen filed Grievance DRF-18-03-0660-17A (Grievance DRF 0660) against Defendant Hunt for preventing Kitchen further access to the prison library in the 300 Building. Kitchen received an itinerary or pass and therefore permission to attend the library in accordance with PD-04.04.130.

10.  The "300 Buidling" is a building on the prison compound that houses rooms used for the schooling of prisoners, the prison library, the prison gym and weight room, and other rooms used for prisoner activities and mental health care.

11.  PD-04.04.130 controls prisoner movement inside all correctional

- 3 -

facilities in order to prevent, among other things, escape, and one of its mandates is for prisoners to attend all events scheduled on their itineraries or passes so that senior staff would know where a prisoner is at all times.

12. However, notwithstanding the mandates of PD-04.04.130, Defendant Hunt blocked Kitchen from further access to the library after Kitchen returned to his assigned quarters to retrieve subpoenas that needed copying to prepare for a deposition which was scheduled to take place on March 27, 2018, in the case of Kitchen v. Heyns, USDC-WD, Case No. 2:14-cv-12883.

13. Kitchen had inadvertently forgotten the subpoenas upon first going to the library in the 300 Building, and so asked the Assistant Librarian, Ms. Helms, if he could return to his cell in order to retrieve the subpoenas for photocopying.

14. Helms agreed, but stated that Kitchen had to inform the guards in the 300 Building that he was returning to retrieve the subpoenas and whether it was okay; Defendant Hunt was one of the guards assigned to the 300 Building at this time.

15. As such, Kitchen informed Defendant Hunt about the scheduled deposition, the subpoenas that had been forgotten and why they needed to be retrieved, and Defendant Hunt consented to permitting Kitchen to return to his assigned cell.

16. However, when Kitchen returned to his assigned cell, Defendant Hunt surreptitiously contacted housing unit staff where Kitchen's assigned cell was located and informed them not to permit Kitchen to return to the library.

17. Notwithstanding the mandates of PD-04.04.130, which mandates that prisoners attend the "call-outs" (i.e., scheduled events) on prison itineraries, Defendants Washington and Rewerts have implemented an unwritten practice or custom that permitted Defendant Hunt, and other guards working in

- 4 -

the 300 Building, to cancel library and other call-outs.

18. Acting in accordance with that unwritten practice, custom, or rule, and/or with the knowledge, approval, or knowing acquiescence of Defendants Washington and Rewerts, Defendant Hunt cancelled, and, therefore, prevented Kitchen from further access to the library on March 17, 2018, and Kitchen filed Grievance DRF 0660 as a result.

19. Defendant Hunt appeared to have been informed by his supervisors about Grievance DRF 0660 sometime around March 22, 2018, because on or about that date he began confronting Kitchen about the grievance.

20. Specifically, on or about March 22, 2018, while Kitchen was again attending the library, Defendant Hunt smirked at Kitchen and nodded his head, stating that the grievance "was a good one", and appeared annoyed.

21. In an effort to avoid a confrontation, Kitchen did not respond to Defendant Hunt, but instead left the library at the end of the session.

22. On or about March 24, 2018, Kitchen was scheduled to attend the Weight Room in the 300 Building, and as he was leaving at the end of that session Defendant Hunt again confronted Kitchen in an angry and annoyed manner about Grievance DRF 0660, claiming that Kitchen had "lied" to him, and this prompted a discussion.

23. During the discussion, Kitchen informed Defendant Hunt that he was preparing for a deposition at the moment and so did not have time to pay attention to the matter, but informed Defendant Hunt that the grievance would be reviewed to determine whether it should be withdrawn.

24. However, on March 26, 2018, before Kitchen had an opportunity to review the grievance issue, Defendant Hunt aggressively and angrily confronted Kitchen as Kitchen reported to the 300 Building to attend the "Weight Room" in accordance with his itinerary or prisoner pass. As prisoners report to

- 5 -

scheduled events known as "call-outs" in the 300 Building, they must turn in their itineraries or passes to a guard.

25. As Kitchen entered the 300 Building to attend the Weight Room, as scheduled on his itinerary or pass, Kitchen was simultaneously removing his sunglasses and sitting them on the top of his head and walking towards Defendant Stanley to turn in his itinerary, as required by practice (i.e., to show that he reported to the Weight Room).

26. Around that same moment, Defendant Hunt began making antagonizing and provocative comments towards Kitchen, stating, among other things, to both Kitchen and the other guards and employees standing around him at the time, "look who we have here", "'gotta' make sure he follows the rules", and made some disparaging remarks about Kitchen's sunglasses or shades which were not heard clearly.

27. In 2015, Kitchen developed a rare form of shingles that infected a nerve connected to his right eye, which nearly resulted in blindness. Since that time, Kitchen has taken to regularly wearing sunglasses, making sure, like normal human beings, to remove them upon entering a building and placing them on near the exit of the building while simultaneously walking outdoors.

28. Kitchen continued this practice on March 26th upon entering the 300 Building to report to the Weight Room for exercise, specifically removing the sunglasses upon entering the 300 Building and putting them on at or near the exit while leaving the building.

29. Kitchen has been removing and putting on his sunglasses in this manner since his arrival to DRF in September of 2017, and Defendant Hunt, although being assigned as a guard in the 300 Building during this entire time and witnessing Kitchen remove and put on his sunglasses in this manner, had never expressed disapproval of or made any comment towards Kitchen about the

- 6 -

manner in which the sunglasses were being removed and put on.

30.  However, it was not until March 26, 2018, after Defendant Hunt was
made aware of and expressed anger and annoyance over Grievance DRF 0660, that
he claimed to now have an issue with the manner in which Kitchen was putting
on his sunglasses while exiting the 300 Building.

31.  When Defendant Hunt began making comments towards Kitchen on March
26th, including, but not limited too, the disparaging remarks about the
sunglasses, Kitchen decided not to engage or respond to Defendant Hunt, and,
in fact, realizing how aggressive and antagonistic he was becoming, Kitchen
changed his mind and decided not to attend the Weight Room to exercise so as
to avoid Defendant Hunt.

32.  Therefore, Kitchen informed Defendant Stanley that he was not going
to stay to exercise in the Weight Room, but, in stead, wanted to return to his
assigned cell, and Defendant Stanley consented.

33.  As Defendant Stanley recorded in a record that Kitchen had reported
to the Weight Room as scheduled, Kitchen turned to leave and walked towards
the exit of the 300 Building.

34.  Defendant Roberts then laughed and stated to Defendant Hunt that he
was "bullying" Kitchen, an obvious derogatory remark made covertly towards
Kitchen.

35.  As Kitchen approached the exit of the 300 Building and in the
process of exiting, he pulled on his sunglasses, like he always does, and
responded to Defendant Roberts that "no one would bully" him or he would
"write it up".

36.  Defendant Hunt became angry at this comment and asked Kitchen to
return and for Kitchen to give him his prison identification card.

37.  Kitchen returned and presented his I.D. card to Defendant Hunt.

- 7 -

38.     During this time, Defendants Stanley, Collins, and Roberts began making disparaging and harassing remarks towards Kitchen.

39.     Defendant Stanley stated that Kitchen had "fucked up", told Defendants Hunt, Collins, and Roberts that they "got" Kitchen, that Kitchen's I.D. card stated the name "Kitchen" and not "Kitchen-Bey", as Kitchen is sometimes referred too, and stated that Kitchen "ran off at his mouth too much."

40.     Defendant Roberts said something to the effect of "Yeah, we got him", that Kitchen "won't be on the call out anymore", and that they (i.e., himself, Collins, Stanley, and Hunt) were "gonna see what" they 'could hook up'" (i.e., write up on Kitchen).

41.     Defendant Collins also laughed and stated "got him this time!", that Kitchen was "dumb" and "fucked up" for "running off at his mouth", and he also commented about Kitchen's name of 'Kitchen-Bey'.

42.     Defendant Hunt stated something to the effect of showing Kitchen "about running off at his mouth", and that he "got Kitchen now".

43.     Soon thereafter, Defendant Hunt filed misconduct charges alleging that Plaintiff Kitchen was "wearing" his sunglasses in the 300 Building as a result of putting them on at the exit to and just prior to exiting the 300 Building.

44.     These misconduct charges filed by Defendant Hunt were false and filed with the intent to retaliate against Kitchen as a result of the filing of Grievance DRF 0660 and Kitchen's threats to greive Defendant Hunt further if he tried to bully him.

45.     Defendants Stanley, Roberts, and Collins filed statements in support of the misconduct charges filed by Defendant Hunt.

46.     These statements were filed by Defendants Stanley, Collins, and

- 8 -

Roberts at the behest of and in order to assist Defendant Hunt.

47.   Defendant Roberts's statement alleged that Kitchen was wearing his sunglasses in the "School Building", which the 300 Building is sometimes referred too, and was ordered to remove his glasses in the school, but turned to leave and put his sunglasses back on.

48.   Defendant Stanley's statement alleged that Kitchen was wearing his sunglasses in the 300 Building, was ordered by Hunt not to wear them in the building, and that Kitchen removed the sunglasses but put them back on.

49.   Defendant Collins's statement alleged that Kitchen was wearing his sunglasses in the 300 Building, that Defendant Hunt ordered Kitchen not to wear his sunglasses in the building, and that Kitchen lifted his sunglasses off of his eyes and stated that "nobody 'gonna' bully me", and then covered his eyes twice more before leaving the 300 Building.

50.   These statements filed by Defendants Collins, Stanley, and Roberts were false and filed with the intent to aid Defendant Hunt retaliate against Kitchen because of Grievance DRF 0660 and the threats to grieve him further for bullying.

51.   Defendant Collins also filed the false statement in order to retaliate against Kitchen because of Kitchen's grievance against him that was filed just before Grievance DRF 0660 was filed.

52.   On March 6, 2018, Kitchen filed a grievance against Defendant Collins alleging that he was improperly denying Kitchen a hearing on shoes that he improperly rejected which came through the mail.  The grievance was coded "DRF-18-03-0545-19B (Grievance DRF 0545).

53.   On or about March 20, 2018, Kitchen was talking to Defendant Collins about returning the shoes to the vendor that they were ordered from to exchange them for other shoes, and Defendant Collins began making disparaging

remarks towards Kitchen, including, but not limited too, stating that Kitchen was acting like he knew policy better, that he was smarter than Kitchen and has been charged with the responsibility of overseeing prisoner property for years and that no one knew the responsibility or policy better than him, that Kitchen was a "smart-aleck", and that he was getting sick and tired of people like Kitchen who file grievances. Kitchen did not respond to these comments, but waited for the barrage to conclude.

54. When Defendant Collins finished, Kitchen submitted a disbursement form to pay for the postage to return the shoes, and Defendant Collins then permitted Kitchen to only return the shoes for a refund rather than permitted to exchange the shoes with the vendor for more acceptable shoes, and that led to the filing of Grievance DRF 0545.

55. After Defendants Stanley, Collins, and Roberts filed their statements on March 26th for and at the behest of Defendant Hunt against Kitchen, prison officials served Kitchen with notice of the misconduct charges on March 27, 2018, at which point Kitchen argued that the charges were filed in retaliation to his grievances against Defendants Hunt and Collins.

56. On April 3, 2018, Defendant Kapustka conducted a misconduct hearing on the misconduct charges, and Kitchen argued that the charges were in retaliation to Grievance DRF 0660 and his threats to grieve anyone who tried to "bully" him. Kitchen also argued that Defendant Collins assisted Defendant Hunt in the filing and/or prosecution of the false and retaliatory misconduct charges because of Grievance DRF 0545, and that Defendants Roberts and Stanley aided Defendants Hunt and Collins retaliate against Kitchen because of Grievances DRF 0660 and DRF 0545 and Kitchen's threat to grieve Defendant Hunt or anyone else who tried to "bully" him. In addition, Kitchen presented copies of Grievances DRF 0660 and 0545 as evidence at the hearing.

- 10 -

57.  Kitchen further argued at the hearing that he has been putting on his sunglasses at the exit to and while exiting all buildings on the compound since his arrival at DRF, and that Defendant Hunt, although aware of the practice, has never had or expressed a problem with that practice until the filing of Grievance DRF 0660 and the threats to grieve Defendant Hunt for bullying.  Therefore, Kitchen argued that the charges were clearly retaliatory and should be dismissed.

58.  Further stating, Kitchen also argued at the hearing that Defendant Hunt never gave him a direct order in any event, or, if he did, such an order was not heard and for that reason the charges should be dismissed.

59.  Defendant Kapustka simply looked at both grievances for about two seconds without reading them, stated that Defendants Stanley, Collins, and Roberts submitted statements, and then stated that he was going to look at video footage of the incident.

60.  Defendant Kapustka then adjourned the hearing, and Kitchen left.

61.  The statements submitted by Defendants Stanley, Collins, and Roberts were not read too or reviewed with Kitchen, nor did Defendant Kapustka describe or permit Kitchen to review the footage that was allegedly taken of the incident.

62.  On April 4, 2018, Kitchen received the hearing report on the misconduct charges through the mail, and it stated that on April 3, 2018, Defendant Kapustka found Kitchen guilty of the charges.

63.  Defendant Kapustka did not outline any findings of fact in the report when finding Kitchen guilty of the misconduct charges, nor did he make any findings of fact disputing Kitchen's defense of not hearing the order and that the charges were filed in retaliation.

64.  Defendant Kapustka did not make any of the findings of fact as

- 11 -

heretofore stated because he was acting in accordance with the policies, rules, and regulations implemented by, and/or with the knowledge, approval, or knowing acquiescence of, Defendants Washington and Rewerts.

65. Further stating, Defendant Kapustka did not make any of the findings of fact as heretofore stated, in addition to conducting the disciplinary hearing in the manner in which he did, including, but not limited too, failing to review with Kitchen, or permitting Kitchen to read, the statements submitted by Defendants Stanley, Collins, and Roberts, failing to describe what the video footage showed, and failing to take into consideration Kitchen's defense of retaliation and defense of not hearing the order, because he wanted to aid Defendant Hunt to retaliate against Kitchen because of Grievance DRF 0660 and the threat to grieve Defendant Hunt for bullying.

66. Class II disciplinary hearings are conducted in accordance with Paragraph PP of PD-03.03.105, which requires that these types of disciplinary hearings be conducted in accordance with Administrative Rule 791.3310, and both policy and rule were enacted by Defendant Washington.

67. Defendant Rewerts enacted OP-03.03.105 to carry out the provisions of Administrative Rule 791.3310 and PD-03.03.150.

68. In enacting Administrative Rule 791.3310 and PD-03.03.105 as it pertains to the conduct of Class II disciplinary hearings, Defendant Washington reduced the hearings to "informal" hearings and did away with or rescinded the requirements that prison officials acting as hearing officers in Class II disciplinary hearings set forth the facts of an incident and the facts upon which their decision at these disciplinary hearings are based.

69. Therefore, in accordance with those provisions, Defendant Kapustka made no findings of facts as heretofore stated, and simply stated in the hearing report that he found Kitchen guilty: "Due to statements from C/O

- 12 -

Stanley, Sgt. Collins, and C/O Roberst (sic) backing up misconduct from Officer Hunt I find prisoner Kitchen Guilty. After review of video this is confirmed."

70.   Further stating, Defendant Kapustka used the provisions of Administrative Rule 791.3310 and PD-03.03.105 to his advantage in order to aid Defendant Hunt to retaliate against Kitchen.

71.   Further stating, Defendant Kapustka did not take into consideration at the hearing Kitchen's claims of retaliation.

72.   As a direct and proximate result of the guilty finding, Kitchen was given: (a) five (5) days loss of privileges; (b) removed as a member or representative of the Warden's Forum; (c) was prevented from attending the Big Exercise Yard, Weight Room, and Prisoner Gym for exercise or recreation; (d) was fired from his prison job assignment as a Weight Pit Worker; and (e) Kitchen's custody level was effectively increased to Level 5 status because, in addition to being prohibited to attend the facility's cafeteria or "Chow Hall" to eat his meals, he is now required to indefinitely remain in his assigned cell for 22 hours a day with a cellmate with about two to three square feet of space to himself.

73.   On April 4, 2018, Kitchen appealed the decision to Deputy Warden Dave Fenby, but on April 16, 2018, Fenby upheld the finding of guilt.

74.   Fenby claimed to have heard the appeal on the record, but, acting in accordance with the policies, rules, and regulations implemented by, and/or with the knowledge, approval, or knowing acquiescence of, Defendants Washington and Rewerts, Defendant Kepustka did not make a record of findings of facts by which an appeal on the record could be conducted.

# S T A T E M E N T   O F   C L A I M S

## COUNT I

### RETALIATION & SUBSTANTIVE DUE PROCESS VIOLAITONS

75.   Plaintiff Kitchen re-alleges the allegations in Paragraphs 1-74 as set forth above, and, in particular, those at Paragraphs 9-74.

76.   As noted therein, Defendant Hunt used and/or abused the power given him by the state by utilizing the prisoner disciplinary process to file false misconduct charges against Kitchen as a result of the filing of Grievance DRF 0660 and the threats to grieve him if he bullied Kitchen, and Defendants Collins, Stanley, and Roberts used the power given them by the state by utilizing the prisoner disciplinary process to aid Defendant Hunt to retaliate against Kitchen by filing false statements in support of Hunt's false misconduct charges.

77.   Defendant Collins also used the power given him by the state by utilizing the prisoner disciplinary process to file the March 26th false statement to support the false misconduct charges filed by Defendant Hunt because Kitchen filed Grievance DRF 0545 against him.

78.   Further stating, Defendant Kapustka used the power of his position given him by Michigan to conduct the disciplinary hearing on the false misconduct charges filed by Defendant Hunt in a manner to deliberately corrupt and misuse the disciplinary hearing process with the intent to aid Defendant Hunt to retaliate against Kitchen, by, among other things, failing to take into consideration Kitchen's claim of retaliation and refusing to make any findings of fact so that a proper appeal of his decision could be taken.

79.   The actions by these Defendants as aforementiond violated the First Amendment and the Substantive Due Process component of the Due Process Clause of the 14th Amendment to the United States Constitution.

- 14 -

80.    As a direct and proximate result of these Defendants' actions, Kitchen suffered damages without limitation, including, but not limited too, the loss of employment as a Weight Pit Worker that resulted in an income of about $26.00 a month, in addition to removal as a member or representative of the Warden's Forum, restricted from access to the big exercise yard, weight room, and gym, and effectively resulting in a custody increase to Level V status as heretofore stated.  The losses described are permanent or continuing in nature and Kitchen will suffer such losses in the future.

WHEREFORE, Kitchen demands judgment for compensatory damages as a result of the loss of employment and punitive damages of $50,000, to be assessed jointly against the Defendants, together with the costs of this action and all other relief recoverable and allowed by law and as this Court deems just, as a result of the false misconduct charges, false statements, the increase to Kitchen's custody level, and the restrictions as heretofore described.

## COUNT II

### ABUSE OF PROCESS

81.    Plaintiff Kitchen re-alleges the allegations in Paragraphs 1-74 as set forth above, and based on such facts Michigan's common law of abuse of process doctrine will apply to Defendants Kapustka, Collins, Stanley, Hunt, and Roberts.

82.    Based on information and belief, this doctrine states that an abuse of process occurs if a process is initiated for (1) an ulterior purpose that (2) is improper in the regular prosecution of the proceeding.

83.    As previously described, Defendant Hunt misused the prisoner disciplinary process by filing misconduct charges against Kitchen knowing that the charges were false and/or initiated solely because Kitchen filed Grievance DRF 0660 and threatened to file another grievance against him if he tried to

- 15 -

bully Kitchen.

84.     Defendants Stanley, Collins, and Roberts misused the prisoner disciplinary process by filing statements in support of the false and retaliatory misconduct charges filed by Defendant Hunt in order to aid Defendant Hunt to retaliate against Kitchen.

85.     Further stating, Defendant Collins also misused the prisoner disciplinary process by filing the false statement as heretofore stated because Kitchen filed Grievance DRF 0545 against him.

86.     Further stating, Defendant Kapustka used Administrative Rule 791.3310 and Paragraph PP of PD-03.03.105 to conduct disciplinary proceedings against Kitchen in a way to corrupt and misuse the process by deliberately refusing to take Kitchen's defense of retaliation against the misconduct charges into consideration and refusing to make any findings of fact in connection with the matter, and did this in order to prevent a proper appeal of his decision and in order to aid Defendant Hunt to retaliate against Kitchen.

87.     The actions of these Defendants as described above violated Michigan's abuse of process doctrine.

88.     As a direct and proximate result of these Defendants' actions, Kitchen suffered damages including without limitation pain and suffering, the loss of employment, and the loss of privileges and status as previously described. The losses are permanent or continuing in nature and Kitchen will suffer such losses in the future.

WHEREFORE, Kitchen demands judgment for damages in excess of $10,000 exclusive of interest and costs, against the named Defendants, together with the costs of this action and all other relief recoverable and allowed by law and as this Court deems just.

## COUNT III

### SUBSTANTIVE DUE PROCESS & CRUEL AND UNUSUAL PUNISHMENT VIOLATIONS

89.   Plaintiff Kitchen re-alleges the allegations in Paragraphs 1-74 as set forth above, and, in particular, at Paragraphs 56-72.

90.   As stated therein, Defendants Washington and Rewerts implemented policies and procedures that degraded or reduced the requirement by hearing officers conducting Class II prisoner disciplinary hearings to make findings of fact in connection with a particular case and identifying the facts upon which hearing officers base their decisions of guilt of prisoner misconduct charges, and these actions led to Defendant Kapustka using Administrative Rule 791.3310 and Paragraph PP of PD-03.03.105 to his advantage to aid Defendant Hunt to retaliate against Kitchen.

91.   Further stating, Defendants Washington and Rewerts implemented policies, procedures, and/or practices which resulted in prisoners found guilty of Class II misconduct charges to effectively have their custody level increased to Level V status and, among other things, prisoners being confined to their assigned cells for twenty-two (22) hours a day with a cellmate and having about two to three square feet of space in the cell.

92.   The actions of these Defendants, including confining prisoners to their assigned cells for 22 hours a day with a cellmate with no more than two to three square feet of space and implementing the aforesaid policies and procedures, violate the Substantive Due Process component of the 14th Amendment's Due Process Clause and the 8th Amendment of the United States Constitution.

93.   As a direct and proximate result of these Defendants' actions, Kitchen suffered damages including without limitation pain, suffering, and

- 17 -

frustration as a result of having to share a cell with a cellmate with only a few square feet of space to himself and the other deprivations as described above. The suffering, pain, and losses are permanent or continuing in nature and Kitchen will suffer such losses in the future.

WHEREFORE, Kitchen demands judgment for damages in excess of $10,000 exclusive of interest and costs, against the named Defendants, together with the costs of this action and all other relief recoverable and allowed by law and as this Court deems just.

<u>VERIFICATION/AFFIDAVIT</u>:

Subscribed and sworn to
before me this 3rd day
of ___May___, 2018.

_____
NOTARY PUBLIC

Michael A. Kitchen (#189265)
Plaintiff Proceeding Pro Se
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan  48811

KURT BLAIR
NOTARY PUBLIC, STATE OF MI
COUNTY OF GRATIOT
MY COMMISSION EXPIRES Jul 12, 2021
ACTING IN COUNTY OF  Montcalm

- 18 -

# CIVIL COVER SHEET FOR PRISONER CASES

| Case No. 18-11471 | Judge: George Caram Steeh | Magistrate Judge: Elizabeth A. Stafford |
|---|---|---|

| Name of 1st Listed Plaintiff/Petitioner: | Name of 1st Listed Defendant/Respondent: |
|---|---|
| Michael Kitchen | Heidi Washington, et al. |

| Inmate Number: 189265 | Additional Information: |
|---|---|

**Plaintiff/Petitioner's Attorney and Address Information:**

**Correctional Facility:**
Carson City Correctional Facility
10522 Boyer Road
Carson City, MI 48811
MONTCALM COUNTY

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

**PURSUANT TO LOCAL RULE 83.11**

1. **Is this a case that has been previously dismissed?**
   - ☐ Yes   ☒ No
   - ➢ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   - ☐ Yes   ☒ No
   - ➢ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases

51/41/8

Michael A. Kitchen (#189265)
Carson City Correctional Facility
10274 E. Boyer Road
Carson City, Michigan 48811

TO:   Clerk of the Court
United States District Court
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 564
Detroit, Michigan  48226

